**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MELVIN LEE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CORRECTIONS CORPORATION OF AMERICA/CORRECTIONAL TREATMENT FACILITY,**<br><br>**Defendant.** | ) | **Civil Action No. 14-cv-772 (ESH)** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Melvin Lee, a resident of the District of Columbia, brings this action against the Corrections Corporation of America ("CCA"). CCA is a Maryland corporation that owns and operates the Correctional Treatment Facility ("CTF"), a private prison that incarcerates inmates in the custody of the D.C. Department of Corrections. Plaintiff was seriously injured when he fell down a flight of stairs while detained at CTF. Plaintiff, who was disabled before his fall, alleges that defendant violated Title II of the Americans with Disabilities Act of 1990 ("ADA") and § 504 of the Rehabilitation Act of 1973 by transferring him from CTF's medical unit to a non-handicap-accessible area of the prison prior to his fall. Plaintiff also alleges that defendant's employees were negligent in ordering him to descend a flight of stairs unassisted. Before the Court is defendant's motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Def.'s Mot. to Dismiss, June 9, 2014 [ECF No. 10] ("Mot.").) For the following reasons, the Court will grant defendant's motion to dismiss plaintiff's ADA and Rehabilitation Act claims and deny its motion to dismiss plaintiff's negligence claim.

**BACKGROUND**

Plaintiff suffers from numerous physical ailments and must walk with a prosthetic right leg. (Pl.'s First Am. Compl., May 23, 2014 [ECF No. 8] ("Am. Compl.") at 1.) Starting on or about April 7, 2011, he was detained at CTF. (*Id.*) On April 20, 2011, a magistrate judge for the U.S. District Court for the District of Maryland ordered the "United States Marshal and/or his contracting agencies" to provide plaintiff with a prompt medical evaluation and offer him "care and treatment consistent with the standard of care for the illness(es) and/or condition(s) revealed by the evaluation." (Order for Medical Evaluation and Appropriate Treatment of Detainee, April 20, 2011 [ECF No. 10-1].) On or about May 16, 2011, plaintiff was transferred from the CTF medical unit to Unit D, which is not handicap accessible. (Am. Compl. at 1-2.) Plaintiff informed CTF employees in Unit D about his disabilities and was told that he would be transferred back to the medical unit. (*Id.* at 2.) Before this could take place, however, a CTF employee ordered plaintiff to descend a flight of stairs given the need for an inmate count. (*Id.*) Plaintiff attempted to descend the stairs unassisted, fell, and fractured his neck and left hip. (*Id.*)

On April 1, 2014, plaintiff filed suit against CCA in the Superior Court of the District of Columbia alleging that CCA employees were negligent in that they "disregarded a Court order requiring the [p]laintiff to remain in the medical unit," "knew or should have known that plaintiff's disability would make it impossible for him to safely navigate the steps, especially without a walker or cane," and "knew or should have known that by requiring the [p]laintiff to attempt to navigate the steps he was likely to fall and sustain serious and permanent injuries." (Compl., April 1, 2014 [ECF No. 1-1] ¶¶ 9-11.)

On May 5, 2014, defendant removed the case to this Court pursuant to 28 U.S.C. § 1441 (Notice of Removal, May 5, 2014 [ECF No. 1]) and soon thereafter moved to dismiss plaintiff's

complaint for failure to state a claim (Def.'s Mot. to Dismiss, May 12, 2014 [ECF No. 3]). Plaintiff then amended his complaint to include allegations that, in transferring him from the medical unit to Unit D, defendant violated Title II of the ADA, § 504 of the Rehabilitation Act, the Architectural Barriers Act of 1973 ("ABA"), the D.C. Human Rights Act ("HRA"), and the Eighth Amendment. (Am. Compl. at 4-8.) Defendant again moved to dismiss, after which plaintiff voluntarily dismissed his ABA, HRA, and Eighth Amendment claims. (Stipulation of Partial Voluntary Dismissal with Prejudice, June 23, 2014 [ECF No. 12].) Plaintiff, however, maintains his ADA, Rehabilitation Act, and negligence claims. (Pl.'s Opp'n to Def.'s Mot. to Dismiss, June 20, 2014 [ECF No. 11]) at 5-13.)[1]

## ANALYSIS

### I. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss for failure to state a claim, a court must "accept as true all of the factual allegations contained in the complaint and draw all inferences in favor of the nonmoving party." *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014). However, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

[1]Also before the Court is plaintiff's motion for leave to file a surreply. (Pl.'s Contested Mot. for Leave to File a Surreply to Def.'s Reply in Supp. of Its Mot. to Dismiss, July 10, 2014 [ECF No. 14].) Although it is questionable whether defendant's reply brief raised issues that would justify a surreply in this case, *see Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187–88 (D.D.C. 2012), the Court will grant plaintiff's motion and consider his additional arguments.

do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**II. AMERICANS WITH DISABILITIES ACT (COUNT II)**

Plaintiff fails to state a claim under Title II of the ADA. To state a claim under Title II a plaintiff must allege: (1) that he is a "qualified individual with a disability"; (2) who "was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (3) that "such exclusion, denial of benefits, or discrimination was by reason of his disability." *Alston v. Dist. of Columbia*, 561 F. Supp. 2d 29, 37 (D.D.C. 2008). The ADA defines "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in § 24104(4) of Title 49)." 42 U.S.C. § 12131. Pursuant to Department of Justice ("DOJ") regulations, Title II "applies to public entities that are responsible for the operation or management of adult and juvenile justice jails, detention and correctional facilities, and community correctional facilities, either directly or through contractual, licensing, or other arrangements with public or private entities, in whole or in part, including private correctional facilities." 28 C.F.R. § 35.152(a). The regulation's definition of "public entity" is the same as the ADA's. *Id.* § 35.104.

As a private prison company, defendant is not covered by Title II of the ADA. The ADA's text provides no indication that a private company is a "public entity" for the purposes of Title II. Further, the regulation states that Title II "applies to public entities" that operate or manage prisons through contracts with private entities, not to contractors themselves. *Id.*

§ 35.152(a). "A private contractor does not . . . become liable under Title II merely by contracting with the State to provide governmental services, essential or otherwise." *Edison v. Dauberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) (citing *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006)). Thus, while Title II of the ADA covers discrimination taking place in prisons, *see Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998), private prison companies are not directly liable for such violations.[2] *See Edison*, 604 F.3d at 1310 (holding that private prison company is not a "public entity" under the ADA); *accord Rodrigues v. Arizona Dep't of Corr.*, 2012 WL 6200624, at * 9 (D. Ariz. Dec. 12, 2012); *Rickerson v. Gills*, 2012 WL 1004733, at *2 (N.D. Fla. Feb. 8, 2012); *Collazo v. Corr. Corp. of Am.*, 42011 WL 6012425, at *3 (N.D. Ohio Nov. 30, 2011); *Gonzalez-Jarquin v. Corr. Corp. of Am.*, 2008 WL 3285764, at *3 (S.D. Ga. Aug. 8, 2008). Because plaintiff fails to allege that he was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a *public entity*, or . . . subjected to

---

[2] Plaintiff argues that the DOJ analysis accompanying the regulation indicates that private prison companies are covered by Title II. (Opp'n at 6-7.) The Court disagrees. The DOJ analysis explicitly states that public entities are liable for violations taking place in privately run prisons, but does not imply that private prison companies themselves are liable under Title II:

> Prisons that are built or run by private entities have caused some confusion with regard to requirements under the ADA. The Department believes that title II obligations extend to the public entity as soon as the building is used by or on behalf of a state or local government entity, irrespective of whether the public entity contracts with a private entity to run the correctional facility. The power to incarcerate citizens rests with the state, not a private entity. As the Department stated in the preamble to the current title II regulation, "[a]ll governmental activities of public entities are covered, even if they are carried out by contractors." 56 FR 35694, 35696 (July 26, 1991). If a prison is occupied by state prisoners and is inaccessible, the state is responsible under title II of the ADA. In essence, the private builder or contractor that operates the correctional facility does so at the direction of the state government, unless the private entity elects to use the facility for something other than incarceration, in which case title III may apply. For that reason, the proposed Sec. 35.152(a) makes it clear that this section's requirements will apply to prisons operated by public entities directly or through contractual or other relationships.

Nondiscrimination on the Basis of Disability in State and Local Government Services, 73 Fed. Reg. 34,466, 34,495 (June 17, 2008).

discrimination by any such entity" 42 U.S.C. § 12132 (emphasis added), the Court will dismiss his ADA claim.

## III. REHABILITATION ACT (COUNT III)

Plaintiff also fails to state a claim under § 504 of the Rehabilitation Act. Section 504 provides that:

> No qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving *Federal financial assistance* or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (emphasis added).

Although defendant receives federal funding through its contracts with the Bureau of Prisons and U.S. Marshals Service, it does not receive "Federal financial assistance" within the meaning of the Rehabilitation Act. Courts interpreting § 504 of the Rehabilitation Act have consistently construed "Federal financial assistance" to mean the federal government's provision of a subsidy to an entity, not the federal government's compensation of an entity for services provided. *See Nolley v. Cnty. of Eerie*, 776 F. Supp. 715, 742-43 (E.D.N.Y. 1991) (holding that a correctional facility receiving federal funds for detaining prisoners did not receive "Federal financial assistance" and therefore was not covered by the Rehabilitation Act); *see also Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005) (holding that an entity receives "Federal financial assistance" within meaning of the Rehabilitation Act when it receives a subsidy from the federal government). Because plaintiff does not allege that defendant receives subsidies from the federal government, the Court will dismiss his Rehabilitation Act claim.

**IV. NEGLIGENCE (COUNT I)**

Plaintiff does, however, state a facially plausible negligence claim. To state a claim for negligence in the District of Columbia, a plaintiff must allege "(1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of care; (2) a breach of this duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach." *Dist. of Columbia v. Fowler*, 497 A.2d 456, 462 n.13 (D.C. 1985).

As indicated in his amended complaint, plaintiff's negligence theory relates to the actions of defendant's employee in ordering plaintiff down the stairs unassisted, not, as defendant argues, the decision to transfer him out of the medical unit. (*Compare* Am. Compl. at 4, *with* Def.'s Reply in Supp. of Its Mot. to Dismiss, June 30, 2014 [ECF No. 13] at 7-8.) Although plaintiff has not identified a specific duty that defendant owed him, his amended complaint states that at the time of his fall he was detained in a prison operated by defendant. (Am. Compl. at 1.) Because the Court draws all inferences in favor of a plaintiff at the motion to dismiss stage, the Court can conclude from these facts that defendant owed plaintiff a common-law "duty of care to exercise reasonable care under the circumstances in the protection and safekeeping of prisoners." *Toy v. Dist. of Columbia*, 549 A.2d 1, 6 (D.C. 1988). This includes the duty "to use reasonable care in supervising and controlling their employees." *Morgan v. Dist. of Columbia*, 449 A.2d 1102, 1108 & n.3 (D.C. 1982), *rev'd on other grounds*, 468 A.2d 1306 (1983) (en banc). Since plaintiff has alleged injuries proximately caused by a breach of this duty (Am. Compl. at 4), he has stated a facially plausible claim to relief and the Court will deny defendant's motion to dismiss his negligence claim.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff's motion to file a surreply [ECF No. 14] is **GRANTED**; it is further

**ORDERED** that defendant's motion to dismiss [ECF No. 10] is **GRANTED IN PART** as to Counts II and III; it is further

**ORDERED** that Counts II and III of plaintiff's amended complaint [ECF No. 8] are **DENIED WITH PREJUDICE**.

**SO ORDERED**.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: August 1, 2014